## STATE v. HENRY PRICKETT.[1]

June 16, 1944.

No. 33,815.

*Johanson & Winter, Clifford Schneller,* and *Forbes & Forbes,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *Mandt Torrison,* Special Assistant Attorney General, and *R. N. Nelson,* County Attorney, for the State.

HOLT, COMMISSIONER.

Defendant, an 18-year-old truck driver, was arrested by game wardens of this state and brought before a justice of the peace in

[1]Reported in 15 N. W. (2d) 95.

Wilkin county charged with the illegal possession of one native frog more than 150 frogs. He entered a plea of guilty, was fined $100 and costs, and, in default of payment, was sentenced to 90 days' confinement in the county jail. He at once appealed to the district court of the county on questions of law and fact. When the cause was called in the district court, defendant moved for leave to withdraw the plea entered in justice court and to enter a plea of not guilty. The motion was denied after a lengthy hearing of oral testimony. Without a trial *de novo,* the court entered judgment that defendant pay a fine of $100 and costs, and, in default of payment, be confined in the county jail for 90 days. Defendant appeals to this court from the judgment.

The statutory offense with which defendant was charged is L. 1943, c. 621, which reads:

"Section 1. Native frogs of any size may be taken and possessed at any time, except during the months of April and the first 15 days of May. No native frogs may be bought, sold, or transported for sale at any time, except that such frogs, not exceeding six inches in length, measured from tip of nose to tip of hind toes, legs fully extended, legally taken, or frogs of any size raised on regularly and duly licensed frog farms, may be bought, sold and transported for angling purposes only, within the state of Minnesota. It shall be unlawful to use cloth screens or other similar contrivances and pitfalls in catching frogs, except upon regularly and duly licensed frog farms. Bull frogs, or parts thereof, lawfully taken outside of the state, may be imported into this state and may be possessed, sold and transported for any purpose within or without the state at any time. Provided, the taking of frogs may be prohibited in such areas of the state and during such periods as the commissioner of conservation may by order prescribe. Provided further, that no person shall be permitted to take or possess frogs unless legally entitled to take fish within the state, and shall not be entitled to possess more than 150 frogs."

Section 2 of the act repealed Mason St. 1940 Supp. § 5587 [Minn. St. 1941, § 101.27]. The act was approved April 24, 1943.

Defendant was arrested and brought before the justice of the peace October 8, 1943.

Minn. St. 1941, § 633.22 (Mason St. 1927, § 9131), contains this provision in respect to trials in the district court of criminal appeals from the justice court:

"* * * Upon an appeal on questions of law and fact, the cause shall be tried in the same manner as if commenced in the district court."

This seems perfectly plain and explicit. If the complaint or information had been filed in the district court and defendant had been arrested on a warrant issued thereon, the first step would have been his arraignment and plea. He would then have been entitled to plead not guilty, or he could stand mute and the plea of not guilty would be entered for him. The state would then have to prove the charge made against him. Upon an appeal to the district court on questions of law and fact from a conviction of a criminal offense in a justice court, the defendant is entitled to a trial *de novo*. That plainly means he must be arraigned and plead in the district court without regard to what took place in the justice court. The above quoted sentence from § 633.22 appears to have been in the statutes when the case of State v. Tiner, 13 Minn. 488 (520), was decided, for the court there said that, on appeal from a justice of the peace conviction on questions of fact or of law and fact, defendant was entitled to a trial in the same manner as if the action were originally begun in district court.

It seems to us that the position taken by the supreme court of Michigan in People v. Richmond, 57 Mich. 399, 24 N. W. 124, is correct, that a "plea of guilty may be withdrawn on appeal in Michigan, and the case will be re-tried on its merits." When that decision was rendered it does not appear that there was any such provision in their statutes as the one quoted above from § 633.22. The Michigan court discusses the contrary view held in Connecticut and Massachusetts and concludes (57 Mich. 403, 24 N. W. 126):

"In all cases of appeal from a criminal conviction on a plea of guilty, we think it is the right of the accused to withdraw his plea of guilty, and have the case retried upon the merits. We think the object of the law granting a right of appeal in case of conviction was for the purpose of according to the accused a retrial in the circuit or appellate court. This end would be defeated if it rests in the discretion of the appellate court to permit a withdrawal of the plea of guilty for the purpose of pleading to the merits. Under the construction which we give to the statute, the accused was entitled as matter of right to withdraw his plea of guilty, and interpose the plea of not guilty."

The state cites cases where in the trial court a defendant has entered a plea of guilty and afterward has moved the court to be allowed to withdraw such plea and enter a plea of not guilty. That is an entirely different situation from that in the case at bar. Where such a motion is made in the trial court, the court must necessarily exercise judicial discretion in its determination of the motion.

But the record in this case is convincing that this 18-year-old truck driver was entitled to withdraw his plea of guilty entered in the justice court and plead to the merits. It is apparent that L. 1943, c. 621, was not intended to reach frogs lawfully caught and bought in North Dakota and which were in interstate commerce en route to Oshkosh, Wisconsin. The statute referred to does not place on the accused the burden of proving that the frogs in his possession were lawfully taken. Chapter 621 does not require the trucker of frogs to have a license to transport them on the highways of this state. Defendant had a 15- or 16-year-old lad from Oshkosh with him for the ride and was somewhat concerned about his status. He wanted to communicate with the one in charge of his employer's business at Fairmount, North Dakota, where the frogs were loaded on the truck, but asserts that he was denied this until after he had entered his plea in the justice court. There were seven game wardens present in the justice court where defendant was arraigned. There is also an inference in the testi-

mony that another man was under arrest accused of carrying "native" frogs (caught in Minnesota) to Fairmount. The one in charge of the frogs at Fairmount had also placed a box containing three pheasants and five ducks on top of defendant's truck, with the direction to deliver the box to his employer's wife at Oshkosh. A tenth charge was placed against defendant for illegal possession of pheasants. It can well be seen that defendant was in an unenviable position and in need of advice of counsel. One would not expect the game wardens or county attorney to advise him to plead not guilty. We conclude that it was an abuse of discretion not to grant the motion of defendant to withdraw his plea of guilty and enter a plea of not guilty.

There were eight other complaints of illegally possessing one frog more than 150 frogs, but the parties have stipulated that these eight cases should abide the decision herein.

Judgment reversed and cause remanded for a trial on the merits.