STATE v. LEONARD BOULTON.
STATE v. RICHARD KWIATKOSKI.
STATE v. EDWARD SWEDZINSKI.[1]

December 30, 1949.

Nos. 34,905, 34,906, 34,907.

*Z. L. Begin* and *Neil M. Cronin,* for appellants.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, and *C. J. Donnelly,* County Attorney, for the State.

FRANK T. GALLAGHER, JUSTICE.

All appeals in the above entitled matters are from orders of the district court dismissing the appeals of the defendants from their judgments of conviction of the crime of assault in the third degree entered against defendants, Leonard Boulton, aged 20 years, Richard

[1]Reported in 40 N. W. (2d) 417.

Kwiatkoski, aged 18 years, and Edward Swedzinski, aged 19 years, such convictions being in the municipal court of the city of Marshall.

The three minors were arrested in Marshall by the sheriff of Lyon county during the night of July 23, 1947, and placed in jail, where they remained for the balance of the night. The next morning, July 24, they were taken before the municipal judge of Marshall and orally charged by the sheriff with the crime of assault in the third degree committed upon a girl in Marshall the night before by bodily forcing her to enter an automobile against her wishes and keeping her there under their control until she was liberated by the officer. None of the minor defendants were represented by counsel at the time of their appearance in municipal court. Each of the boys entered a plea of guilty, and each was adjudged guilty by the court and sentenced as follows: Leonard Boulton, $15 fine and $5 costs, or 20 days in jail; Richard Kwiatkoski, $10 fine and $5 costs, or 15 days in jail; and Edward Swedzinski, $25 fine and $5 costs, or 30 days in jail. The fines were paid immediately, and the boys were released. In addition to the municipal judge, the sheriff, and the three defendants, the county attorney of Lyon county and the chief of police of Marshall were also present at the proceedings in municipal court.

On July 26, 1947, notices of appeal were served on the county attorney, and appeal bonds were presented to the municipal judge on July 28, 1947. The municipal court refused to act on the bonds on the ground that there was no right of appeal. Mandamus proceedings were brought by defendants directed to the municipal court, and, pursuant to an order of the district court, the municipal judge approved the bonds and made his return to the district court, which return was filed September 10, 1947. The three cases were heard at the same time in municipal court and were argued together in district court on the motion to dismiss the appeals made by the county attorney on the minutes of the court. The cases were submitted on the affidavits of the minor defendants, their fathers, the officers involved, and others at the time of the hearing on the motion to dismiss in district court.

It appears here that the municipal court of Marshall was organized under L. 1895, c. 229, and is still operating under that law. Section 38 thereof provides that appeals from such municipal courts to district courts are governed by the same rules as appeals from justice to district courts.

The principal issue before us on review of the files, records, and proceedings is whether the pleas of guilty and the payment of the fines were voluntary so as to justify the decision of the district court that the motions to dismiss the appeals should be granted.

We have reviewed all the affidavits, and it appears to us that the district court epitomized the claims of defendants and the denials of the officers in its memorandum, intended to apply to all three cases, which we quote in part:

"The defendants claim that in municipal court they had been subjected to being sworn at by the municipal judge, that they had been threatened that they could get from $3\frac{1}{2}$ to 7 years, that they could be sent to the reform school. They also claim that they were advised by the municipal judge that the matter would be publicized in the papers if they stood trial and that they were urged to plead guilty. The defendants Boulton and Kwiatkoski claimed they were influenced by the municipal judge to believe that simply because they were riding in the car they were guilty. All three claim now to be innocent of the charge to which they pleaded guilty.

"The municipal judge, the sheriff, the county attorney and the chief of police specifically deny the charges made by the defendants and claim that after the sheriff made the verbal complaint in the presence of the defendants the municipal judge re-stated the charge to the defendants; that they were asked whether they wanted an attorney and that each defendant stated they did not; that they were asked whether they wanted a jury trial, and each defendant stated he did not; that they were asked what their plea was and that each defendant entered a plea of guilty; that when each defendant had entered his plea the municipal court inquired as to the circumstances surrounding the offense and that each defendant freely admitted his part in the wrongful conduct towards * * * [the girl];

that each defendant expressed regret over the conduct towards * * * [the girl] and promised the municipal judge that their future conduct would be proper.

* * * * *

"Each defendant admits that he was advised and that they were told they had a right to be represented by counsel before their plea of guilty was actually entered, although they claim they were so advised after they had agreed to plead guilty. None of them admittedly indicated any desire to avail themselves of the opportunity to be represented by counsel. Even if they had not been advised of their right to be represented by counsel, this court knows of no statutory or constitutional requirement in this State that in misdemeanor cases the court must advise the defendant of his right to counsel. However, the fact that the defendants admittedly were advised of their right to counsel before they entered their pleas is significant. It is unbelievable that if the claims of the defendants as to the misconduct of the municipal judge were true that the municipal judge would invite the defendants to procure counsel before he accepted their pleas.

"The defendants were personally present in court when the motion herein was heard. They were respectively of the ages of 18, 19 and 20 years when the convictions were had in municipal court. All three appeared to be well-developed, mature and intelligent young men. It is inconceivable that these young men did not know what they were charged with, as they claim.

"Taking all the facts and circumstances into account, the Court is convinced that the plea of each defendant and the payment of the fine was the voluntary act of each individual. Judging the affidavits of the parents herein the only involuntary element in the case is the stubborn refusal of the parents to yield to the compelling conviction that their sons had committed a crime."

The state and defendants each cite, among others, State v. People's Ice Co. 127 Minn. 252, 149 N. W. 286, Ann. Cas. 1916C, 618, and State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611.

In State v. People's Ice Co. *supra*, the ice company was indicted

by the grand jury on a charge of unlawfully entering into a combination in restraint of trade in violation of a statute, was tried in district court before a jury, was convicted, and was sentenced to pay a fine, which it paid. The ice company later appealed from the judgment and sentence. The state moved to dismiss the appeal on the ground that prior to the taking of the appeal the ice company voluntarily paid the judgment and that under the circumstances an appeal did not lie from a judgment imposing a fine. There, the president of the ice company, a foreign corporation, had been found guilty under an indictment charging him, the ice company, and others with an unlawful combination in restraint of trade, an offense under G. S. 1913, § 8973. He had obtained a stay, and, while the stay was pending, he and the attorneys for the ice company expressed a desire to the prosecuting attorney that the whole matter be settled. An arrangement was made with the trial judge to hold a special term at the place of the trial for that purpose, which was done. The president of the company, or his attorneys, then requested that the stay as to him be vacated and sentence imposed. He was fined and he paid the fine. Also, as president of the ice company, he withdrew the company's plea of not guilty and entered a plea of guilty. The sentence was a fine, and the president of the company immediately paid the fine imposed on the ice company. No dissent to the form of the sentence or the amount of the fine was suggested at that time, and no appeal was taken until a few days before the time for appeal had expired. We held there that the whole course of the ice company in procuring a special session of the court so as to allow it to change its plea to guilty, its payment of the fine without any suggestion that either the fine or the amount thereof was not proper, and the long delay in taking the appeal all tended to show that the payment was voluntary. In commenting on the ice company's contentions in that case that it had the statutory right to appeal within six months after judgment was pronounced; that the satisfaction of the judgment did not affect this right; that the payment of the fine could not be held voluntary, since the company had property subject to execution; and that, since the stay of execu-

tion on appeal in a criminal case is a matter of grace and not of right, the payment of the fine should not be held to be voluntary, this court, in the opinion written by Mr. Justice Holt, agreed that there was much force in these contentions, fortified by decisions holding that even in the absence of statutory provisions a litigant in a civil action who pays a judgment rendered against him may still prosecute his appeal and, in case of reversal, may recover the amount paid in satisfaction of the judgment. The court then went on to say that the analogy is strong between the right to appeal in a civil action, as affected by the payment of the judgment, and the right to appeal in a criminal case where the sentence has been carried out, citing cases, including Commonwealth v. Fleckner, 167 Mass. 13, 15, 44 N. E. 1053, from which it quoted (127 Minn. 254, 149 N. W. 286) :

"* * * We should be slow to suppose that the Legislature meant to take away the right to undo the disgrace and legal discredit of a conviction, * * * merely because a wrongly convicted person has paid his fine or served his term. * * * Of course the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress."

The opinion then continued by stating that the authorities which hold to the contrary proceeded on the theory that when sentence is executed, either by imprisonment or by payment of the fine, there no longer exists a judgment from which to appeal, since the suit is ended, also citing cases on behalf of that theory. However, we did not adopt either line of such authorities in the ice company case, as this court specifically said (127 Minn. 254, 149 N. W. 286) :

*"It is not necessary to determine which line of authorities should be followed, for we are persuaded that here appellant voluntarily paid the fine and fully acquiesced in the sentence. * * * The appeal can involve nothing but the propriety of a fine or the amount thereof."* (Italics supplied.)

The appeal was ordered dismissed.

It is true that the fact situation in the ice company case differs from that in the case at bar. There, defendant was a corporation in-

dicted by the grand jury, was represented by counsel, was tried in district court, was convicted and sentenced to pay a fine, which it paid, and made no attempt to appeal until the statutory period had almost expired. Here, defendants were minors; they were convicted on their pleas of guilty in a municipal court organized under L. 1895, c. 229, which provided under § 38 thereof that appeals from any judgment, order, or action of said court shall be governed by the rules applicable to appeals from justice court to district court; they were not represented by counsel; and they attempted to perfect their appeals almost immediately after conviction. However, the fact remains that in the ice company case the supreme court was persuaded that the appellant voluntarily paid the fine, and the court dismissed the appeal, while here the district court was persuaded that defendants voluntarily pleaded guilty and paid their fines, and it dismissed the appeals.

In State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611, *supra,* defendant was convicted on May 25, 1927, before a justice of the peace on a complaint charging him with the use of threatening and abusive language and unlawfully pointing a gun at another person, contrary to an ordinance of the city of Red Wing. He was sentenced to the county jail for 60 days and to pay $3 costs, which he paid immediately, but he was not committed to jail until July 11, 1927. On August 2, 1927, a writ of certiorari was issued out of the district court, which ordered a desisting from all further proceedings under the commitment and judgment until the hearing and determination upon the writ. Thereafter, the district court made findings of fact that the conviction and sentence of the defendant were sustained by the evidence, that they were regular, were within the jurisdiction of the justice court, and were valid. The district court ordered the proceedings dismissed, the writ quashed, and defendant remanded to the custody of the sheriff for commitment to the county jail to serve out the balance of his sentence, from which order an appeal was taken to this court. It was there held that the findings and conclusions of the trial court were correct. We also said in that case that the violation of a city ordinance is not an

offense against the state, but only against the municipality enacting it; that the right of appeal may be denied, citing cases; and that authorities hold that where a defendant on conviction acquiesces in the judgment or complies in whole or in part therewith there is a waiver of the right of review, citing cases, including State v. People's Ice Co. *supra.*

We are seriously confronted with the rule laid down in State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95. There, defendant, an 18-year-old truck driver, was arrested by game wardens of this state and taken before a justice of the peace charged with the illegal possession of one native frog more than 150 frogs. He entered his plea of guilty, was fined $100 and costs, and, in default of payment, was sentenced to 90 days' confinement in the county jail. He immediately appealed to the district court on questions of law and fact, as in the instant case. However, that case differs from the case at bar, in that there the appeal was taken before the defendant paid the fine or was imprisoned. There, when the case was called in district court, the defendant moved for leave to withdraw his plea of guilty entered in justice court and to enter a plea of not guilty. The motion was denied after a lengthy hearing of oral testimony. Without a trial *de novo,* the district court entered judgment that defendant pay a fine of $100 and costs and, in default of payment, be confined in the county jail for 90 days. Defendant appealed to this court from the judgment.

M. S. A. 633.22 contains this provision in respect to trials in district court of criminal appeals from justice court:

"* * * Upon an appeal on questions of law and fact, the cause shall be tried in the same manner as if commenced in the district court."

In the Prickett case the court said in part (217 Minn. 631, 15 N. W. [2d] 96):

"* * * Upon an appeal to the district court on questions of law and fact from a conviction of a criminal offense in a justice court, the defendant is entitled to a trial *de novo.* That plainly means he

must be arraigned and plead in the district court *without regard to what took place in the justice court."* (Italics supplied.)

As stated, the defendant there had not yet paid his fine when he appealed. Here, defendants attempted to perfect their appeals after they paid their fines. If we intended to decide in the Prickett case that, regardless of what took place in the justice court (here municipal) and even though the sentence has been executed either by imprisonment or the payment of a fine, defendant is entitled to a trial *de novo* on an appeal on questions of law and fact from a conviction of a criminal offense in such a court to district court, then, clearly, the appeals here should not have been dismissed by the district court, and defendants should be entitled to a trial *de novo* in that court. However, it is our opinion that such was not the intention. On the contrary, it appears to us that what we decided there was that where an appeal is taken before the sentence is executed, either by imprisonment or the payment of the fine, and where a judgment still exists from which such appeal can be taken under § 633.22 the defendant is entitled to a trial *de novo* in district court.

The question of a defendant's rights where the sentence has already been executed by imprisonment or payment of the fine seems to be one of first impression here. We hold that, taking into consideration all the facts and circumstances as shown by the record in the instant case, where it appeared that the district court was convinced that the plea of each defendant and the payment of the fine were the voluntary acts of each individual and where it appeared that the sentence of the justice court (here municipal) had already been executed by the payment of the fine, that the district court was right in dismissing the attempted appeals, because at the time the appeals were attempted there no longer existed any judgments from which appeals could be taken, since the cases were ended and closed.

Defendants here contend that no written complaints were filed and that no warrants were issued, that they were not represented by counsel, and that they were "pressured" into pleas of guilty by

threats in the municipal court proceeding. L. 1895, c. 229, § 31, provides in part:

"In all cases where alleged offenders shall be in custody and brought before the court without process the clerk shall enter upon the records of the court a brief statement of the offense with which the defendant is charged, which shall stand in place of a complaint unless the court shall direct a formal complaint to be made. The plea of the defendant shall be 'Guilty' or 'Not guilty.' "

With reference to representation by counsel, especially in the case of minors, it is always desirable that they be so represented if they wish and also that their parents be notified before a trial, if possible. In this case, the minors, aged 18, 19, and 20 at the time of the proceedings in municipal court, were all present in district court when the motion to dismiss their appeals was heard, and that court said in its memorandum that all three appeared to be well-developed, mature, and intelligent young men and that it was inconceivable that they did not know what they were charged with, as they claim. According to the affidavits of the judge of the municipal court, the sheriff, and the chief of police, each of the minors was asked if he desired to be represented by counsel, and each said that he did not. However, in State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 225, 220 N. W. 611, 612, where complaint was made that the justice of the peace did not advise defendant that he had a right to have assistance of counsel in his defense, we said: "It was not incumbent upon the justice so to advise him." See, also, State v. Martin, 223 Minn. 414, 27 N. W. (2d) 158.

The claims of the minors that they were influenced into pleading guilty by the misstatements and threats of the municipal judge are all denied by the officials involved. These officers are all holding responsible positions of trust in their community, and their affidavits are entitled to weight. We agree with the district judge that if the claims of misconduct of the municipal judge were true it is unbelievable that he would have invited the minors to procure counsel before he accepted their pleas, as the officials claim in their affidavits.

However, courts and officials charged with the administration of justice cannot be too careful in performing their duties, to the end that the rights of all litigants and persons charged be protected under our laws. We cannot admonish too strongly against any methods on the part of any courts, whether justice, municipal, or otherwise, to bring about a plea of guilty merely to get the case disposed of and the file closed as a matter of expediency or convenience to the court.

In the case of Richard Kwiatkoski, it appears from the court's memorandum that the fine was paid with a check, which the municipal court accepted, and that before the check was presented payment was stopped on it on instructions from Richard's father. The fine and costs represented by the check were later paid under protest on behalf of Kwiatkoski. We agree with the statement of the district court in its memorandum that when the check was given and the municipal court accepted it the transaction was closed, and that if Kwiatkoski voluntarily delivered the check at the time in payment of his fine such act could not be made involuntary by subsequently stopping payment on the check and later paying the amount under protest.

Orders affirmed.

PETERSON, JUSTICE (dissenting).

1. Under the doctrine of State v. Prickett, 217 Minn. 629, 15 N. W. (2d) 95 (see, *Id.* 221 Minn. 179, 21 N. W. [2d] 474), a defendant upon appeal to the district court from a judgment of a justice of the peace convicting him of a criminal offense, whether it be upon a finding of guilt or his own voluntary plea of guilty, is entitled under the provisions of the statute governing appeals in such cases to a trial *de novo* the same as if the prosecution had been originally commenced in the district court and absolutely without regard to what took place in justice court. There, defendant entered a plea of guilty before a justice of the peace and appealed from the conviction. We said (217 Minn. 631, 632, 15 N. W. [2d] 96, 97):

"* * * Upon an appeal to the district court on questions of law and fact from a conviction of a criminal offense in a justice court,

the defendant is entitled to a trial *de novo*. *That plainly means he must be arraigned and plead in the district court without regard to what took place in the justice court.* The above quoted sentence from § 633.22 appears to have been in the statutes when the case of State v. Tiner, 13 Minn. 488 (520), was decided, for the court there said that, on appeal from a justice of the peace conviction on questions of fact or of law and fact, *defendant was entitled to a trial in the same manner as if the action were originally begun in district court.*

\* \* \* \* \*

"The state cites cases where in the trial court a defendant has entered a plea of guilty and afterward has moved the court to be allowed to withdraw such plea and enter a plea of not guilty. That is an entirely different situation from that in the case at bar. Where such a motion is made in the trial court, the court must necessarily exercise judicial discretion in its determination of the motion." (Italics supplied.)

Here, payment of the fines is relied upon as a waiver of the right to appeal. As pointed out in State v. People's Ice Co. 127 Minn. 252, 149 N. W. 286, Ann. Cas. 1916C, 618, there is a conflict of authority as to whether payment of a fine has that effect. But it is settled beyond doubt that a plea of guilty constitutes an absolute waiver of the right to appeal. 24 C. J. S., Criminal Law, § 1842. In the Prickett case we held, notwithstanding the plea of guilty and the waiver under ordinary rules of the right to appeal, that a defendant has the right to appeal and to a trial *de novo* upon the appeal. The Prickett case is authority for the proposition that the statutory right of appeal and trial *de novo* on appeal are unaffected by anything occurring in justice court which would constitute under ordinary rules a waiver thereof. A reason for such a rule is suggested by the fact that the informality, speed, stress, error, and even injustice incident to proceedings before justices of the peace require that opportunity be afforded to correct the miscarriages of justice and to relieve parties from the harmful consequences thereof.

2. Aside from the absolute statutory right to appeal and to a trial *de novo* upon the appeal, defendants were entitled to appeal for the reason that they had not waived the right to appeal. Under our decisions, if payment of a fine is not *voluntary*, it does not operate as a waiver of the right to appeal. State v. People's Ice Co. *supra;* State v. C. G. W. R. Co. 125 Minn. 332, 147 N. W. 109. In the People's Ice Co. case, *supra,* we left open the question whether mere payment of a fine, absent affirmative proof of intention to relinquish and abandon the right to appeal, operated as a waiver of the right. We there pointed out that in civil cases[2] the rule is that payment of a judgment to avoid its enforcement has no such effect and that the authorities were in conflict as to whether payment of a fine in a criminal case did. As illustrating the rule of the cases holding that payment of a fine is not a waiver of the right to appeal in criminal cases, we quoted from Commonwealth v. Fleckner, 167 Mass. 13, 15, 44 N. E. 1053:

"* * * Of course the payment of the fine in accordance with the sentence was not a consent to the sentence, but a payment under duress."

The case of State ex rel. Weich v. City of Red Wing, 175 Minn. 222, 220 N. W. 611, proceeds upon the theory that there was a "voluntary" payment of the fine within the rule of the People's Ice Co. case. Of course the case is not in point, because here the fact situation, as has been pointed out, is different.

Here, it is held that waiver of the right to appeal results from the mere fact of payment of the fines without any affirmative proof of intention on the part of defendants to waive their right to appeal. It appears without dispute that if the fines had not been paid defendants would have been put in jail. Such a payment of a fine is not a voluntary one and constitutes no waiver of the right to appeal. State v. C. G. W. R. Co. *supra.* In civil cases, it is held that payment of a judgment to a sheriff armed with an execution is not a voluntary payment waiving the right of appeal. Grady v. Hansel,

---

[2]Accord: Patnode v. May, 182 Minn. 348, 234 N. W. 459; C. G. W. Ry. Co. v. Beecher (8 Cir.) 150 F. (2d) 394; 4 C. J. S., Appeal and Error, § 214.

57 N. D. 722, 223 N. W. 937. Can there be any doubt as to whether these defendants—mere boys without experience and understanding—were, under the circumstances, under at least as much compulsion with imprisonment in jail staring them in the face in the event they did not pay their fines as that with which a judgment debtor would be confronted by a sheriff armed with an execution? To ask the question is to answer it in the affirmative.

There can be no justification for holding in criminal cases, as is done here, that payment of a fine constitutes a waiver of the right of appeal, and in civil cases that payment of a judgment does not. The law should afford a man at least as much protection against an unjust conviction of a criminal offense as it does against an unjust judgment establishing a civil liability. One's good name deserves the same protection as his purse and property.

As a matter of policy, no innocent man should ever be subjected to the odium and disgrace of conviction of a crime. The law should be so administered as to afford the innocent every means of removing such a blotch upon their good name. One's good name is a priceless possession. And it may be not only his sole asset, but often his most valuable one. After all, it is true that he—

"Who steals my purse steals trash; * * *
But he that filches from me my good name
Robs me of that which not enriches him
And makes me poor indeed."

A man with a prior conviction, however baseless, is under a handicap in the struggles of life—in obtaining employment and advancement and in social intercourse. Others may be injured indirectly, as where a party to litigation calls him as a witness. In such a situation, the prior conviction may be shown, and, where a case turns on the credibility of witnesses, it may be the decisive factor.

It has been said: "An erroneous judgment * * * is an injury per se." Barthelemy v. People (1842) 2 Hill (N. Y.) 248, 255. Because of the injury to a man's name and fortune, the Massachusetts

court in Commonwealth v. Fleckner, 167 Mass. 13, 15, 44 N. E. 1053, *supra,* said:

"* * * We should be slow to suppose that the Legislature meant to take away the right to undo the disgrace and legal discredit of a conviction, * * * merely because a wrongly convicted person has paid his fine or served his term."

As said in Roby v. State, 96 Wis. 667, 670, 71 N. W. 1046, 1047:

"It appears by the record that the plaintiff in error was sentenced to one year's imprisonment in May, 1896, and consequently that his term must now have expired. This fact, however, makes no difference with the disposition of the case. A person convicted of crime may prosecute his writ of error while serving his sentence, and the fact that he may serve out his entire sentence before the decision of his case does not affect his right to a reversal of the judgment if it be erroneous. *The mere payment of a judgment in a civil cause does not operate to bar or waive the right to appeal therefrom* (Sloane v. Anderson [1883] 57 Wis. 123, 13 N. W. 684, 15 N. W. 21), *and for stronger reasons the compulsory working out of a judgment in a criminal case does not debar a man from obtaining a reversal of an erroneous conviction, and thus removing the stigma which wrongly rests on his name and reputation."* (Italics supplied.)

For the reasons that defendants had, under the appeal statute, an absolute right to an appeal and to a trial *de novo* in the district court, regardless of any alleged waiver thereof in municipal court, and that there was no waiver in fact, there should be a reversal. Since defendants are mere boys standing at the threshold of manhood, they should not be compelled to go through life, if they are innocent, as they claim they are, with their names besmirched by unjust or erroneous convictions. It is a matter not only of personal interest to them, but of public interest to society at large, that the law should afford them an opportunity to clear themselves of the charges made against them.