## Commonwealth v. Nernberg

*David J. Flower, Assistant District Attorney*, for Commonwealth.
*Maurice A. Nernberg, Jr.*, for defendant.

SHAULIS, *J.*, July 27, 1981—The court now considers an appeal from Maurice A. Nernberg's summary conviction for three violations of the Motor Boat Law: 55 P.S. §483 et. seq. (repealed 1980, current version at 30 Pa.C.S.A. §5101 et seq.).

In June of 1980, appellant was boating on Indian Lake in this county when he was approached by two Deputy Waterways Patrolmen. The patrolmen discovered that appellant was in violation of several sections of the Motor Boat Law and so informed him. Patrolman Donald Anderson then explained to Mr. Nernberg the various ways in which the Fish Commission seeks to allow those found in violation of the Motor Boat Law to settle their case. Appellant was advised of the law's provision for "field acknowledgments" of guilt and told that if he did not wish for citations, for all of the discovered violations to be filed with a district justice, who could set the penalty for each violation at up to $100 per violation, he might elect to sign a field acknowledgment of guilt to the most serious violation (having an insufficient number of personal flotation devices). He was told that he would be assessed a $25 fine by the Fish Commission for that violation and receive only written warnings for the others.

Appellant did not make his choice of action known to the deputy patrolmen on the day of the inspection. When appellant failed to contact a Fish Commission official within three days, citation for three violations were filed with a district justice's office. Mr. Nernberg did not appear at the scheduled hearing, and was there found guilty and assessed with fines and costs.

Challenging those convictions, appellant contends that the actions of the Fish Commission through its employees, the two deputy patrolmen,

constituted prosecutorial misconduct and denied appellant certain of his rights under the Constitutions of Pennsylvania and the United States. The focus of this claim is the manner in which the Fish Commission's employees extended the offer of written warning in exchange for a signed field acknowledgment of guilt as to one of the alleged violations.

## DISCUSSION

At the time appellant's boat was inspected by the deputy patrolmen, the field acknowledgment procedure utilized by the Fish Commission for violators of the Motor Boat Law, was authorized by 55 P.S. 490(b) (repealed 1980, replaced by a substantially similar provision at 30 Pa.C.S.A. §925). In pertinent part, 55 P.S. 490(b) read:

(b) Any person charged with violating any provision of this act, or any rule or regulation prescribed by the commission under this act, other than an offense which is classified as a misdemeanor, may sign an acknowledgment of the offense committed either before or after the beginning of prosecution and pay to any waterways patrolman the penalty in full together with costs accrued to that date. Before any person shall sign an acknowledgment pursuant to this subsection, the waterways patrolman shall orally advise the person of his rights to a hearing and summary proceeding.

Penalties for violations of the Motor Boat Law were set out in 55 P.S. 490(a) (repealed 1980), current provisions are at 30 Pa.C.S.A. §923).

(a) Any person violating any provisions of this act, or any rule or regulation prescribed by the commission under this act, shall, upon conviction thereof in a summary proceeding before a justice of

the peace, alderman or magistrate, be sentenced to pay a fine of not less than five dollars and costs, nor more than one hundred dollars and costs, or, in default of payment thereof, thirty days in jail.

Apparently it was the Fish Commission's desire that its officers be able to accept field acknowledgments without the necessity of having the violator summoned before a district justice. The fact that §490(a) only set minimum and maximum guidelines for sentencing made this desired end difficult to achieve, however, since there was no way for the waterways patrolmen accepting a field acknowledgment to know what "the penalty in full" for a violation would be.

The Commission's solution was to develop its own set of recommended penalties for acknowledged violations of the Motor Boat Law. These guidelines were distributed to Commission employees and were then used to determine the amount of fine to be collected from violators signing field acknowledgments. In the case at hand, for example, appellant was told that the fine to be levied, if he acknowledged the violation of having an insufficient number of personal flotation devices aboard his boat, would be $25, the penalty recommended by the Commission for that violation.

While the Commission undoubtedly adopted this procedure with an eye toward expediency and serving the public interest, it neither had, nor has now, any power to establish criminal penalties in such a manner. Our Pennsylvania Supreme Court has stated that the sentencing of criminals is a judicial duty and that determination of the "duration or period of the sentence is an essential part of a judicial judgment." Young v. Commonwealth Board of Probation and Parole, 487 Pa. 428, 432,

409 A. 2d 843, 846 (1979). Since a monetary fine is as much a penalty in nature as is a period of incarceration, the determination of its amount is likewise a judicial duty. Pa. Const. Art. V, §1, vests the whole judicial power of the Commonwealth in the courts. No part of this judicial power belongs to either the legislature or execution agencies such as the Fish Commission: Young, at Pa. 342 A. 2d 846; Com. v. Halloway, 42 Pa. 446, 448 (1862). The determination of the amount of a fine to be imposed under 55 P.S. §490 was a judicial duty which could not be performed by any executive or administrative agency but only by a member of the judiciary as stated in §490(a).

We draw support for this ruling from the decision in Com. v. Graber, 39 D. & C. 489 (1940). There defendant was convicted and fined under a section of The Game Law pertaining to damaging trees on state land. It provided for a fine based in part on the value of the injured trees "as determined or estimated by the game commission's employees." Noting that the legislature cannot vest any judicial power in an administrative officer or in any way trench upon the province of the judiciary the court held that the statute unconstitutionally permitted employees of the game commission to ultimately fix the amount of the fine imposed upon a convicted violator. Id, at 493. It was held that the function of setting the exact amount of a monetary fine was purely judicial and could only be performed by a verdict of a jury or by the judiciary. Id, at 491.

Since the Commission had no authority of its own to assess a $25 fine for a violation of the Motor Boat Law which carried no set fine, the procedures taken by its employees in offering such a fine in exchange for a field acknowledgment are clearly tainted with impropriety. Of even greater concern to this court,

however, is the actual bargaining which took place between the Commission's deputy patrolmen and the appellant.

We recognize, of course, that the practice of plea bargaining between prosecutors and defense attorneys is, when surrounded by proper safeguards, a valid practice and a practice frequently in the best interests of both the Commonwealth and defendant. See, Com. v. Cavell, 424 Pa. 573, 576, 227 A. 2d 662, 663 (1967). It is the absence of "safeguards" when such bargaining occurs between an accused violator and a Fish Commission employee that causes us to have reservations about the procedure in this context. Unlike the case where a bargain has been struck between defense counsel and a prosecutor, a field acknowledgment procedure may be accepted even though the accused has not consulted with counsel and (most importantly in our opinion) even though there is no disinterested third party present who must be convinced that acceptance of the acknowledgment will serve the ends of justice. See, Com. v. Marony, 423 Pa. 337, 350, 223 A. 2d 699, 705 (1966).

Offenses at the summary level have traditionally been considered so non-serious that the normally required positive safeguards attaching to the acceptance of a guilty plea have not been required. We feel that his informal procedure renders the summary defendant particularly susceptible to a loss of his or her rights through a bargaining process such as that involved in this case.

Clearly, this process tends to coerce the summary defendants toward a guilty plea. The accused violator is bargaining, not with an officer of the court who is subject to the standards of professional conduct and discipline for prosecutors (see, A.B.A. Standards Relating to the Prosecution Function,

Part IV, Approved Draft, 1971) but with an employee of the Fish Commission who is responsible for discovering violations, has the discretion or not to issue citations, and under the Fish Commission's system even claimed discretion as to the amount of penalty to be levied upon a field acknowledgment of guilt. Such bargaining is akin to the situation where a trial judge takes part in the plea bargaining discussions; judges, of course, are not permitted to participate in the bargaining since it is felt that the presence of one with the power inherent in a judge pressures defendant and taints the plea: Com. v. Sanuti, 454 Pa. 344, 348, 312 A. 2d 42, 44 (1973).

Even when the summary defendant declines to sign a filed acknowledgment he or she stands to lose rights through the unsafeguarded bargaining process. As was the case here, patrolmen requesting field acknowledgments, may offer in exchange for an acknowledgment of a particular violation or violations, the issuance of written warning (which carry no fine) for other violations which the patrolman believes he has discovered. Conversely, if the summary defendant refuses to sign a field acknowledgment, the patrolman will file citations with a district justice rather than issue warnings. We would suppose that the purpose in allowing patrolmen to issue a warning rather than file a citation for a particular offense is to grant officers some discretion as to the violation which is de minimis, inadvertent, or occurs under some other mitigating circumstances. When warnings are used to coerce a field acknowledgment from a summary defendant or even where a patrolman threatens to or does withhold the issuance of a warning because an alleged violator refues to acknowledge guilt of a violation, that defendant has been subjected to an

abuse of the bargaining process. If an accused violator's act is such that he normally would receive only a written warning, he or she should not stand to lose that warning for refusal to sign a field acknowledgment for some other alleged violation.

In conclusion, we find that two factors, the Commission's assertion of judicial power which it does not possess and the use of coercive and unfair bargaining techniques in regard to a summary defendant not protected by the usual constitutional safeguards attaching to plea bargains or guilty pleas, placed that defendant in what was basically a "no win" situation at the time of bargaining with the Fish Commission deputy patrolman. This procedure was so fundamentally unfair that petitioner was denied his right to procedural due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

Coerced field acknowledgments are nothing short of extortion when the funds created by the acknowledgments find their way into the coffers of administrative agencies such as the Fish Commission or Game Commission.

The Commonwealth has argued that over 7000 summary violations of the fishing and boating laws and regulations were disposed of by acknowledgments of guilt in 1980 as if that made the practice more palatable, but what the statistics don't show is how many people were coerced and paid rather than run the risk of multiple charges and fines going into the hundreds or thousands of dollars. Few summary defendants can afford the risk of the threatened additional charges or higher fines, or the luxury of defense counsel and will consequently accept the offer of the field receipt.

While Title 30, §923 of the Fish and Boat Code of 1980 will eliminate the practice of a greater fine if

convicted than if a field receipt is accepted, there still remains the danger of threats of additional charges if settlement is not made by field receipt and this we would consider as prosecutorial misconduct and most reprehensible. The officers in this case were merely following the practice set down by the Fish Commission and are not personally to blame.

## ORDER

Now, July 27, 1981, defendant's convictions for violation of the Motor Boat Law are vacated and defendant found not guilty for the reasons set forth in the foregoing opinion.

Costs on the County of Somerset.