Commonwealth *v.* Iacobino, Appellant.

Argued April 15, 1935.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

66

*Harold A. Scragg*, with him *Joseph Marzzacco*, for appellant.

*John W. Murphy*, Assistant District Attorney, with him *Michael J. Eagen*, District Attorney, for appellee.

OPINION BY MR. JUSTICE KEPHART, May 13, 1935:

Dominick Iacobino, charged with killing Colandrucci, upon being arraigned, pleaded guilty generally to the charge of murder. The court proceeded to take testimony to determine the degree of the crime. The defendant was present at all times, and, with his counsel, took an active part in the examination of witnesses.

At the conclusion of the Commonwealth's evidence, counsel for defendant moved for the appointment of a commission to inquire into defendant's sanity at the time of trial. The court appointed a commission consisting of a lawyer and two psychiatrists to examine defendant. The commission heard both counsel for Commonwealth and defendant. They reported defendant sane at the time of the commission of the offense and at the time the report was filed. Counsel for defendant then requested the court to permit further testimony to assist the court in fixing the proper punishment. Defendant claimed he was intoxicated when the crime was committed and the testimony thus offered and received in no way bore on the question of the defendant's sanity, but consisted of testimony regarding the facts of the case, to the degree of defendant's intoxication, and his general reputation.

After considering all the testimony and the report from the commission appointed to determine the condition of

defendant's mind, the court found him guilty of murder in the first degree, and fixed the penalty as death. A careful examination of the record shows all the ingredients of murder of the first degree. Defendant killed two men and seriously wounded three others in revenge for some grievance in connection with a game of cards, and the court below did not abuse its discretion in fixing the penalty at death. The accused had ample time for reflection and deliberation when he left the beer garden, went to his home some hundred and sixty feet away, procured the revolver and stiletto, and returned to the garden where the assaults were made. Those causes which, it is argued, acted to prevent reflection and precipitate inconsiderate action incompatible with the death penalty were not sufficient for us to hold that the court acted unwisely, much less abused its discretion. Such evidence was contradicted by the Commonwealth and the court did not err in entering the judgment and imposing the sentence.

Defendant contends that the Commonwealth must affirmatively prove beyond a reasonable doubt not only the essential ingredients of murder in the first degree, which includes the specific intent to take life, but proof that defendant's mind at the time of the commission of the offense was capable of forming such specific intent to take the life of his victim. When an accused enters a plea of guilty to an indictment charging murder, he does not plead guilty to murder in the first degree (Com. v. Berkenbush, 267 Pa. 455, 461); the plea, without further action, was sufficient to sustain the charge of murder in the second degree; if the Commonwealth wished to raise the degree the burden was on it to prove the essential elements of the higher degree: Com. v. Bednorciki, 264 Pa. 124; Com. v. Tompkins, 267 Pa. 541; Com. v. Drum, 58 Pa. 9, 18. It must show beyond a reasonable doubt a killing that was "wilful, deliberate and premeditated." The specific intent to take life, "the main distinction of murder in the first from that of the second degree" (Com. v.

Gibson, 275 Pa. 338, 342; Com. v. Robinson, 305 Pa. 302) existed in this case.

Intention to kill may be shown by the defendant's acts or words or by all the circumstances of the case; it may be inferred from the intentional use of a deadly weapon upon a vital part: Com. v. Green, 294 Pa. 573, 584; Com. v. Troup, 302 Pa. 246, 253. But, no case has gone to the extent of holding that the Commonwealth, in addition to proving circumstances indicating such intent beyond a reasonable doubt, must also show the mental capacity of defendant to formulate the intention manifested by his words or actions.

In criminal, as in other matters, sanity is presumed. The defense of insanity is an affirmative one and must be established by the defendant by "fairly preponderating evidence," showing an unsound mind at the time the act was done. The presumption of sanity, which is the normal condition of man, "holds good, and is the full equivalent of express proof until it is successfully rebutted": Com. v. Gerade, 145 Pa. 289, 297; see Com. v. Kilpatrick, 204 Pa. 218; Com. v. Calhoun, 238 Pa. 474; Com. v. Sushinskie, 242 Pa. 406; Com. v. Molten, 230 Pa. 399; Com. v. Scovern, 292 Pa. 26, 34. Similarly, when the defense is intoxication, the burden is on the defendant to establish that his intoxication was such as to prevent forming any intent. "The mere intoxication of the defendant will not excuse or palliate his offense unless he was in such a state of intoxication as to be incapable of conceiving any intent. If he was, his grade of offense is reduced to murder in the second degree": Com. v. Cleary, 135 Pa. 64; Com. v. Detweiler, 229 Pa. 304, 308. The burden to establish the fact of intoxication is by "fairly preponderating evidence": Com. v. Walker, 283 Pa. 468, 475; Com. v. Troy, 274 Pa. 265, 271; Com. v. Prescott, 284 Pa. 255, 257-8. The same rule applies where the influence of drugs is relied upon to negative intention: Com. v. Morrison, 266 Pa. 223.

Where mental capacity at the time of the act is an issue, the Commonwealth is aided by the presumption of sanity, it is not required to prove affirmatively mental capacity to commit the act. As stated in Com. v. Morrison, supra (page 229), "The general presumption is that every man is normal and is possessed of ordinary faculties; such defenses as intoxication, insanity and aphasia (or a mind not conscious of its acts), are affirmative defenses and the burden is on the defendant to establish them. . . . The Commonwealth cannot undertake the burden of showing a sound mind when it does not know the nature of the defenses, and can become acquainted with it only when offered."

Defendant objects to the fact that the court below, in finding the crime to have been murder of the first degree, and in fixing the penalty as death, took into consideration the report of the commission appointed to inquire into the condition of defendant's mind both at the time of his arraignment for trial and when the offense was committed. Defendant contends that so considering the report deprived him of his constitutional right to be confronted with and to cross-examine all witnesses who might appear against him, since he was afforded no opportunity to examine the commission in open court, particularly as to their finding that he was sane at the time the offense was committed. A defendant charged with a crime who invokes a statutory or common law remedy to determine his sanity before trial or after conviction has no constitutional right to be confronted by or cross-examine witnesses or the members of the commission appointed to ascertain that fact. Such inquiries are for the determination of a fact apart, separate and distinct from that of guilt of the crime itself, as to which trial or sentence may or may not be ordered. The appointment is not demandable of right and if it is contended the members appointed are biased or otherwise incompetent, objection, with the reasons therefor, should be made to the court at the time of appointment. The court may then determine

whether it has made a mistake in the selection of persons to inform its conscience. Where witnesses are produced, and they may be by either side, it is customary for counsel to appear and examine or cross-examine them if necessary. The matter is entirely in the control of the court appointing these officers, who in the interest of justice will see that the accused is not prejudiced by the course of the investigation.

The record does not support defendant's contention. Defendant's counsel in requesting the inquiry said: ". . . the sole issue in this case is not what his mental condition was on the day of the crime but what his mental condition is to-day, which was the reason we entered the plea of guilty to the charge in the indictment." It does not appear that any witnesses were offered or rejected, or that any effort was made to examine the members of the commission. The order was made in the presence of defendant and his counsel. The commission was appointed to examine defendant "for the purpose of aiding the court in arriving at a proper disposition of his plea, and for the further purpose of informing the conscience of the court," and to report to the court their conclusions as to the mental soundness of the defendant, both at the time of trial and at the time of the commission of the offense charged in the indictment; the latter portion was unnecessary as it was not in issue. No exception, however, was taken to the form of this order nor to the report of the commission (under oath) which found the defendant sane at the time of its examination and at the time of the offense.

Defendant did not contend that he was insane when the offense was committed, such a contention would be manifestly inconsistent with his plea of guilty; insanity constitutes a complete defense of the crime charged or none at all: Com. v. Wireback, 190 Pa. 138, 152. The issue upon which defendant now desires the right to be confronted by and cross-examine witnesses was already precluded by his plea. The court below, in asking for a re-

port on the state of defendant's mind when the offense was committed, made doubly certain a fact that was admitted and unnecessary to be investigated; no right of defendant was thereby invaded by the court's finding.*

With respect to the determination of the defendant's sanity at the time of arraignment, the methods for resolving this question are fully discussed in Com. v. Scovern, supra, and Com. v. Ragone, 317 Pa. 113. Where defendant's sanity is questioned prior to trial or at the arraignment, procedures to determine this issue are provided both in section 67 of the Act of March 31, 1860, P. L. 427, and in section 308 of the Mental Health Act of July 11, 1923, P. L. 998. It was pointed out in the Ragone Case that the Act of May 2, 1933, P. L. 224, applies only "in case of the conviction of any person for any defense." In addition, the provisions of section 308 of the Mental Health Act expressly apply to persons detained in prison "whether waiting trial or undergoing sentence."

Defendant's application to the court was for the appointment of a "commission" under the Act of 1933, supra. That act, however, does not provide for a "commission" to examine the defendant, but for the appointment of a psychiatrist employed in any state hospital or in any mental hospital maintained by the county. The personnel of the commission appointed by the court in this instance would indicate that the court chose to proceed under section 308 of the Mental Health Act, since that section authorizes, inter alia, the appointment of a commission as provided in section 304 of the act, consisting

---

* "Two of the judges of said court, to wit, Judges LEACH and LEWIS (the president judge of said court, Judge NEWCOMB, being unavailable on account of illness) heard the evidence of the Commonwealth and the evidence of the defendant and duly considered the report of a commission appointed by said court at the request and upon the petition of the defendant through his counsel, to make an examination of the said defendant and to report to the said court their conclusions as to the mental soundness of the said defendant at the time of their examination and at the time of the commission of the offense charged in the indictment in the above stated case."

of three persons, "two of whom shall be qualified physicians and the other a lawyer." As the conduct of such inquiry is within the control of the court, there is no error in so proceeding. Their report is subject to the approval of the court which may, in its discretion, "summon other witnesses, and secure further evidence." The granting of such a petition is within the sound discretion of the trial court (at least if made before trial) and the method provided in the act is not exclusive (Com. v. Scovern, supra; see also Com. v. Cilione, 293 Pa. 208; Webber v. Com., 119 Pa. 223), but, where there is an abuse of discretion, this court will correct it: Com. v. Ragone, supra.

Inquiries into the sanity of a prisoner whether made before trial or after conviction and before sentence are "to inform the conscience of the judge": Com. v. Scovern, supra. As stated in Laros v. Com., 84 Pa. 200, 211, in speaking of a common law application for a trial by jury on the question of the defendant's sanity after verdict but before sentence, "We have no precedents in this State, known to us, how the inquiry shall be conducted when such a plea in bar of sentence is put in. It seems to us, however, that no right of trial by jury is involved in the question. . . . The plea at this stage is only an appeal to the humanity of the court to postpone the punishment until a recovery takes place, or as a merciful dispensation."

In Nobles v. Georgia, 168 U. S. 398, 42 L. ed. 515, it was held unnecessary, in order to constitute due process of law, to have a suggestion of insanity made after conviction tried by a jury in a judicial proceeding surrounded by all the safeguards and requirements of a common law jury trial; the manner of determining such questions may be provided for by legislative regulation or by the common law power of the court as in the Laros Case. In other jurisdictions, it has been held that where an inquiry is made into the sanity of a defendant, either during or after trial, by commission or otherwise, the

purpose of which is solely to inform the conscience of the court, the accused does not have as a matter of right the privilege of being confronted with the alienists or other witnesses, or of cross-examining them: People v. North-cott, 289 Pac. 634 (Cal.) ; In re Smith, 176 Pac. 819 (N. M.) ; State v. Norstrom, 58 Pac. 248 (Wash.), affirmed 181 U. S. 616, 45 L. ed. 1029. Such an inquiry is directed to the conscience of the court, and the court, both under the applicable statutes and under the common law, has a wide latitude in order to inform itself fully as to the prisoner's condition.

The judgment of the court below is affirmed, and the record is remitted for the purpose of execution.