810 A.2d 1233

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Anthony James FIEBIGER, Appellant.**

Supreme Court of Pennsylvania.

Argued March 5, 2001.

Decided Nov. 22, 2002.

William Difenderfer, H. David Rothman, Anthony Fiebiger, Pittsburgh, for Anthony James Fiebiger.

Michael Wayne Streily, James Robert Gilmore, Pittsburgh, for Commonwealth of Pennsylvania.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, and SAYLOR, JJ.

## OPINION

Chief Justice ZAPPALA.

These are direct appeals [1] from two separate convictions and sentences of death by the Allegheny County Common Pleas Court. After assuming jurisdiction of this appeal, this Court received briefs from the parties and set a date for oral argument. On July 17, 2000, this Court received a copy of a letter from Appellant's co-counsel, H. David Rothman, addressed to Appellant. The letter was copied to this Court along with a copy of a letter from Appellant to co-counsel,

[1] All appeals in cases where the death penalty has been imposed are reviewed directly by this Court. *See* 42 Pa.C.S. § 9711(h)(1).

William H. Difenderfer. That copied letter, dated July 8, 2000, stated that Appellant no longer wanted the assistance of attorneys Difenderfer and Rothman and explicitly directed counsel to stop all work on Appellant's behalf. Following oral arguments before this Court held on March 5, 2001, we remanded by *per curiam* orders, to the Allegheny County Court of Common Pleas for a determination of waiver of appellate rights. *See* 768 A.2d 290.

On May 18, 2001, the Allegheny County Court of Common Pleas held a colloquy where Appellant was extensively questioned. The common pleas court determined that Appellant was making a knowing, voluntary, and intelligent waiver of his right to appeal and right to have the assistance of counsel to represent him. *See* N.T. 5/18/2001 at 33.

■ Despite Appellant's waiver of his right to appeal and his right to appellate counsel, this Court is obligated to determine whether the sentence of death was the product of passion, prejudice, or any other arbitrary factor. *See* 42 Pa.C.S. § 9711(h)(3)(i). In order to fulfill this mandate, this Court will examine the sufficiency of the evidence presented against Appellant, as this Court does in all cases where a sentence of death has been imposed. *See Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982); *see also Commonwealth v. Michael,* 544 Pa. 105, 674 A.2d 1044 (1996)(holding that even where Appellant expressed a desire to have his death sentence affirmed, this Court is required in all cases in which the death penalty has been imposed to conduct an independent review of the sufficiency of the evidence). The purpose of such review by this Court is to ensure that the sentence comports with the Commonwealth's death penalty statute. *See Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991)(citing *Commonwealth v. Appel,* 517 Pa. 529, 539 A.2d 780 (1989)). Having fulfilled these duties, as detailed below, we now affirm the convictions and judgments of sentence of the Allegheny Common Pleas Court.

■ This Court must determine whether the evidence was sufficient to establish that the fact finder could have

reasonably determined that all the elements of the offense were proved beyond a reasonable doubt. *See Commonwealth v. Kemp*, 562 Pa. 154, 753 A.2d 1278, 1280 (2000). We view all evidence and reasonable inferences drawn from that evidence in the light most favorable to the Commonwealth as the verdict winner. *See id.*

■ In order to sustain a verdict of first-degree murder, the Commonwealth must prove that a human being was unlawfully killed, that the defendant did the killing, that the killing was willful, deliberate, premeditated, and that the defendant acted with the specific intent to kill. *See id.; see also* 18 Pa.C.S. §§ 2501–2502(a).

## No. 300 CAP

■ At trial, the Commonwealth presented evidence that a body was found in Grandview Park, in the Mount Washington neighborhood of Pittsburgh on May 22, 1982. *See* N.T. at 121. The body was discovered in a shallow, partially covered grave. *See id.*

The Commonwealth presented the video taped testimony of Dr. Leon Rozin, who performed an autopsy on the victim in 1982. *See id.* at 128, *and also,* Testimony of Leon Rozin, M.D., 2/4/1999. Dr. Rozin testified that the victim was strangled and stabbed in the neck. *See* Testimony of Leon Rozin, M.D., 2/4/1999 at 11–13. The ligature marks on the victim's throat were consistent with a belt found near the body. *See id.* The victim also suffered injuries to her genitalia which were consistent with having been caused by a stick or tree branch. *See id.* at 20. The autopsy also revealed that the victim had consumed approximately seven or eight alcoholic drinks on the night of her death. *See id.* at 27.

City of Pittsburgh Police Detective Dennis Logan interviewed Appellant on May 28, 1998. After Appellant was given *Miranda* warnings, Appellant gave a statement in which he admitted to his participation in the murder of Marcia Jones, the victim. Appellant and his friend, Joe Morton, decided that they wanted to go to Grandview Park to molest and rape

somebody. *See* N.T. at 193. When they encountered the victim, Appellant and Morton asked her if she would like to accompany them into the park to smoke marijuana. The victim agreed and followed the two men into the park. Appellant then choked the victim with his right forearm until she fell to the ground. *See id.* at 194. During this time, the victim pleaded for her life. *See id.* at 196. Morton sat on the victim's chest while both removed the victim's clothing while punching and kicking her. Appellant stated that he attempted to have intercourse with the victim, but was unable to maintain an erection. Morton did have intercourse with the victim. Appellant described how he and Morton took turns choking the victim with her belt. As the victim lay on the ground, Appellant further abused her with a stick. In order to be sure that the victim was dead, Appellant and Morton went to Appellant's house, retrieved a kitchen knife, and returned to the park where Appellant and Morton, in turn, stabbed the victim in the neck. Appellant stated to police that the reason he had to kill the victim was because she could identify him. *See id.* at 196. The two then moved the body to a ditch and covered it with twigs and weeds. *See id.* at 197. Detective Richard McDonald also testified to the content of Appellant's statement. Detective McDonald's testimony was materially similar to that of Detective Logan. The Commonwealth played a tape recording of Appellant's confession, made immediately following his initial statement, for the court. *See id.* at 210.

After our independent review of the evidence presented at trial, including the above, when viewed in the light most favorable to the Commonwealth, we find that there was sufficient evidence for the jury to find Appellant guilty of the first-degree murder of Marcia Jones.

■ This Court is also obligated to determine whether the evidence supports the finding of at least one aggravating circumstance from those enumerated at 42 Pa.C.S. § 9711(d). *See* 42 Pa.C.S. § 9711(h)(3)(ii). The jury in this case found

that the Commonwealth proved two aggravating factors,[2] that the killing was committed in perpetration of a felony, and that the killing was for the purpose of preventing the victim from becoming a witness in criminal proceedings against Appellant. *See* 42 Pa.C.S. §§ 9711(d)(6) and (d)(5), respectively. Because, the jury found that Appellant had proved the existence of a mitigating factor as well, we examine the sufficiency of all the aggravating factors to insure that the sentence was not reached by passion, prejudice, or some other arbitrary factor that might be caused by the weighing of an aggravating circumstance that was not supported by sufficient evidence. The Commonwealth relied entirely upon a stipulation incorporating all evidence presented in the guilt phase into the penalty phase. The Commonwealth argued that the murder was committed in perpetration of rape.[3] The evidence adduced during the guilt phase demonstrated that Appellant participated in the abduction of the victim with the intent to commit rape, and that Appellant did have sexual intercourse[4]

2. The jury also found one mitigating circumstance, under 42 Pa.C.S. § 9711(e)(8)(Any other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense.). On the jury verdict slip, the jury noted "confession" in addition to the paragraph number assigned to Section 9711(e)(8) by the trial court on the verdict slip, in the appropriate place on the slip to indicate the mitigating circumstance found. The jury found that the unanimously found aggravating circumstances outweighed the mitigating circumstance.

3. Rape is defined by 18 Pa.C.S. § 3121, which states:
   (a) Offense defined.—A person commits a felony of the first degree when he or she engages in sexual intercourse with a complainant:
   (1) By forcible compulsion.
   (2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.
   (3) Who is unconscious or where the person knows that the complainant is unaware that the sexual intercourse is occurring.
   (4) Where the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of complainant, drugs, intoxicants or other means for the purpose of preventing resistance.
   (5) Who suffers from a mental disability which renders the complainant incapable of consent.
   (6) Who is less than 13 years of age.
   18 Pa.C.S. § 3121.

4. Appellant's statement indicated that he attempted to have intercourse with the victim but was physically unable to continue with this act.

with the victim by forcible compulsion. Additionally, the Commonwealth argued that Appellant killed the victim in order to prevent her from identifying him. Appellant's statement to police indicated that this was the reason that he murdered the victim.[5] As we find that the sentence of death was not the product of passion, prejudice, or any other arbitrary factor; and that the evidence supports the finding of at least one aggravating circumstance, we affirm the sentence of death. *See* 42 Pa.C.S. §§ 9711(3)(i) and (ii).

## No. 281 CAP

In a separate proceeding, Appellant pleaded guilty to the first-degree murder of another victim, Norma Parker. On June 24, 1999, Appellant was colloquied by the trial court, and the court determined Appellant was making a knowing, voluntary, and intelligent plea of guilty. During the colloquy, the court questioned Appellant regarding his understanding of the elements of first-degree murder and his understanding that a guilty plea to first-degree murder might result in a sentence of death, or at least a mandatory sentence of life imprisonment. The court questioned Appellant regarding his understanding of his right to a trial before a jury, and the court questioned Appellant's understanding of how a jury would be chosen. The court admitted to the record a ten page written colloquy containing 64 questions that relate to Appellant's constitutional rights and his understanding of the proceedings.

The Commonwealth summarized the evidence that it would have produced, had the matter gone to trial. The Common-

Viewing the evidence in the light most favorable to the Commonwealth, the evidence is sufficient for a jury to infer that Appellant achieved some degree of penetration, which, however slight, is sufficient to fulfill that element of rape. *See* 18 Pa.C.S. § 3101 (defining "sexual intercourse" as occurring "with some penetration however slight; emission is not required."); *see also In re A.D.*, 771 A.2d 45 (Pa.Super.2001), *and Commonwealth v. Trimble*, 419 Pa.Super. 108, 615 A.2d 48 (1992).

5. We have previously noted that it is the intent to kill a potential witness, fully formed prior to the event, which provides the animus upon which this particular aggravating circumstance rests, as long as that intention is established by direct evidence. *See Commonwealth v. Appel*, 517 Pa. 529, 539 A.2d 780 (1988).

wealth was prepared to present evidence that Appellant and the victim, Norma Parker, were involved in a relationship and shared the same residence. The victim disappeared in February of 1989, having last been seen on February 28, 1989. When police investigated her disappearance, Appellant indicated that the victim had "just up and left," and he did not know where she had gone. *See* N.T. 6/24/1999 at 9. The Commonwealth would have introduced a witness who assisted Appellant in loading a 55 gallon plastic barrel into the victim's automobile. Additionally, the Commonwealth would have produced police officers that participated in the investigation and to whom Appellant gave a detailed confession of how he strangled the victim first with his bare hands, then with a towel, and finally with nunchak sticks. This confession continued and told of how Appellant placed the body into a large plastic drum and solicited the help of another person to load the barrel into the victim's car, that Appellant dug a hole in Washington County where he buried the body; how he returned with battery acid, recently purchased from an auto parts store, and poured the acid over the grave. The Commonwealth would have introduced testimony from other police witnesses describing how the victim's body was discovered after Appellant's confession, and that the body was in a place and manner consistent with Appellant's confession.

The following exchange then occurred between the trial court and Appellant:

THE COURT: Why are you pleading guilty to murder in the first degree?

THE DEFENDANT: Because of the instructions that you gave me. That was my intention.

THE COURT: More specifically, what are you referring to?

THE DEFENDANT: Because that's the crime that I committed.

N.T. at 21. The court then accepted Appellant's guilty plea as having been knowing, voluntary, and intelligent.

The trial court then began a sentencing proceeding by administering a colloquy to determine whether Appellant wished to have a jury empanelled for sentencing. The court questioned Appellant regarding his knowledge of his right to a jury during sentencing and his understanding of how a jury would be chosen. The trial court explained that if Appellant waived his right to a sentencing jury, the court itself would have to make a sentencing determination based upon aggravating and mitigating circumstances. Appellant answered unequivocally that it was his desire to waive his right to a jury. *Id.* at 25.[6]

■ At the sentencing hearing, the Commonwealth presented arguments and evidence for three aggravating circumstances, 42 Pa.C.S. §§ (d)(9),(d)(10), and (d)(11). All three of the circumstances have their roots in Appellant's previous criminal history: that Appellant had a significant history of previous felony convictions involving the use of force, that Appellant had previously been convicted of an offense which resulted in a sentence of life imprisonment or death, and that the Appellant had been convicted of another murder committed before the offense at issue. The Commonwealth presented the court papers regarding Appellant's trial, conviction, and sentence for the murder of Marsha Jones, as previously described in this consolidated opinion. Additionally, the Commonwealth presented court papers that indicated that Appellant had been convicted of an aggravated assault that was committed on or about May 12, 1986. *See* N.T. at 27. Appellant presented evidence under the catchall mitigating circumstance, 42 Pa.C.S. § 9711(e)(8), regarding his good character and that the court should take into consideration his confession, which came at a time when, it was argued by Appellant, he may not have been a suspect in the investigation of the victim's disappearance.

6. Where a guilty plea has been entered, a jury will be impaneled and the sentencing proceedings will proceed before the jury unless waived by the defendant with the consent of the Commonwealth. In such instance, the trial judge hears the evidence and determines the penalty in the same manner as a jury would under 42 Pa.C.S. § 9711(a). *See* 42 Pa.C.S. § 9711(b).

The trial court found that the Commonwealth had proved all three aggravating circumstances that it had presented. The court also found that the volunteering of information, guilty plea, and current relationship with Marianne Windgard and her daughter, supported the mitigating circumstance at 42 Pa.C.S. § 9711(e)(8). The court found that the aggravating circumstances outweighed the mitigating circumstance and sentenced Appellant to death.

As Appellant's guilty plea was entered knowingly, intelligently, and voluntarily, with Appellant acknowledging that he committed each element of first-degree murder, we do not find that the conviction was the product of passion, prejudice, or any other arbitrary factor and therefore affirm the conviction. *See* 42 Pa.C.S. § 9711(h)(3)(i). As the evidence of record demonstrates that Appellant had previously been convicted of first-degree murder and sentenced to death, as well as a separate conviction for aggravated assault, there is ample evidence to support the trial court's finding of each of the aggravating factors that it found in this case. Thus, we do not find that the sentence was the product of prejudice, passion, or any other arbitrary factor. Also, we find that the evidence supports the finding of at least one aggravating circumstance. Therefore we affirm the sentence of death. *See* 42 Pa.C.S. §§ 9711(h)(3)(i) and (ii).

The Prothonotary is directed to transmit a full and complete record of these proceedings to the Governor, pursuant to 42 Pa.C.S. § 9711(i).

Justice NIGRO and Justice NEWMAN did not participate in the consideration or decision of these cases.

Former Chief Justice FLAHERTY did not participate in the decision of these cases.

Justice SAYLOR files a concurring opinion.

### CONCURRING OPINION

Justice SAYLOR.

I join the majority opinion, save for the finding of sufficient evidence of vaginal penetration of the victim by Appellant to

support the aggravating circumstance of killing in the perpetration of an underlying felony, 42 Pa.C.S. § 9711(d)(6), here rape. *See* Majority Opinion, *slip op.* at 6 n. 4. As the foundation for the aggravator, the majority relies upon the testimony of two detectives to the effect that Appellant confessed to having attempted to have sexual intercourse with the victim. *See* N.T. Feb. 24—Mar. 1, 1999, at 194 (relating that "[Appellant] said he attempted to have sex with [the victim], but he could not maintain his erection"), 226 (indicating that Appellant "attempted to have intercourse with [the victim, but] was unable to get an erection. . . ."). I believe that it calls for too great an inference, however, to discern the fact of actual penetration from such generalized references.

Nevertheless, the jury was charged that it was not required, for purposes of the in-the-perpetration-of-a-felony aggravator, to conclude that Appellant had personally committed the underlying felony. *See* N.T., Feb. 24—Mar. 1, 1999, at 460. Such instruction was consistent with precedent, as this Court previously has held that evidence that a defendant was an accomplice in the rape of a murder victim was sufficient to support a jury's finding of the Section 9711(d)(6) aggravating circumstance. *See Commonwealth v. Lee,* 541 Pa. 260, 281–82, 662 A.2d 645, 656 (1995).[1] Here, both detectives also testified that Appellant acknowledged that his accomplice engaged in forcible sexual intercourse with the victim during the course of their assault, *see* N.T. Feb. 24—Mar. 1, 1999, at 195, 226, thus establishing the necessary foundation under *Lee.* I am therefore able to join the majority in affirming the convictions and sentences imposed.

[1]. The present situation is distinguishable from that in which the defendant bears only accomplice liability for the killing itself; in the latter case, this Court has deemed the Section 9711(d)(6) aggravator inapplicable. *See Commonwealth v. Lassiter,* 554 Pa. 586, 593–94, 722 A.2d 657, 661–62 (1998) (holding that the language of Section 9711(d)(6) requires a defendant to have performed the murder himself). Here, as in *Lee,* the evidence established that the relevant defendant participated in the actual killing. *See* N.T., Feb. 24—Mar. 1, 1999, at 194–96, 225–27. Further, *sua sponte* review of the correctness of *Lee* is outside the scope of our limited mandate in this case.