868 A.2d 403

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Michael B. SINGLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 12, 2004.

Decided Feb. 24, 2005.

6

Clinton T. Barkdoll, James M. Stein, Waynesboro, for Michael B. Singley, appellant.

John F. Nelson, Johnstown, Amy Zapp, Harrisburg, for the Com. of PA, appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## *OPINION*

Chief Justice CAPPY.

This is a direct appeal from the judgment of sentence of death [1] following the conviction of Appellant Michael B. Singley ("Appellant") for two counts of first-degree murder,[2] two counts of criminal attempt to commit murder,[3] one count of rape,[4] one count of criminal trespass [5] and one count of theft.[6] For the following reasons, we affirm the judgment of sentence.

The record reveals that on November 3, 1998, Appellant Michael B. Singley purchased three rolls of duct tape, ammunition for a .44 Magnum handgun, a folding lock-blade hunting knife and camouflage hunting gloves at retail stores in or around Chambersburg, Pennsylvania. He then drove to the neighborhood where his cousin, Travis Rohrer, lived with his wife, Christine Rohrer. Appellant loitered in the neighborhood, waiting for Christine's arrival home from work. At approximately 5:45 p.m. that evening, Appellant saw Christine Rohrer's Jeep in the driveway of the duplex where she and her husband resided. Appellant parked his vehicle a block away and proceeded on foot to the Rohrer residence carrying two rolls of duct tape, the gloves, hunting knife, and the ammunition for the handgun he knew that his cousin Travis Rohrer owned. Appellant gained entry into the Rohrer residence by feigning car trouble to Christine and asked to use the telephone to obtain assistance. Appellant indicated to Christine that the car trouble may have been the result of a malfunctioning car battery. Mrs. Rohrer then indicated that she could assist Appellant but first needed to change clothes.

1. *See* 42 Pa.C.S. §§ 722(4), 9711(h)(1); Pa.R.A.P. 702(b) and 1941.

2. 18 Pa.C.S. § 2501.

3. 18 Pa.C.S. § 901.

4. 18 Pa.C.S. § 3121.

5. 18 Pa.C.S. § 3503.

6. 18 Pa.C.S. § 3921.

Once Mrs. Rohrer was upstairs, Appellant went to her room and began binding Christine Rohrer's arms and mouth with the duct tape. Appellant went downstairs to retrieve something, and on his return upstairs, Appellant broke through the door which Christine Rohrer managed to lock in his absence. Appellant wrestled with Christine Rohrer for a time and then bound her arms to the bed frame, covered her eyes and mouth with the duct tape, leaving her nostrils exposed and bound her legs with the tape. He unbound her legs and raped Christine Rohrer. Appellant left the bedroom, smoked a cigarette in another room and then re-entered the bedroom where he repeatedly stabbed Christine Rohrer in the chest, neck and torso. She died as a result of the injuries inflicted.

Travis Rohrer returned home at about 8 p.m. that evening and found Appellant on the second floor brandishing both the handgun and the knife. Appellant forced Travis Rohrer into the bedroom, where Christine Rohrer's body was covered with the bedclothes. Appellant pistol-whipped Travis Rohrer before ordering him to the ground. Appellant then stabbed Travis Rohrer several times in the back. A scuffle ensued, during which both Appellant and Travis Rohrer struggled for control of the handgun. Appellant wrested the gun free and shot Travis Rohrer once in the arm and once in the ribcage before going downstairs. Travis Rohrer survived the assault.

With the keys to Christine Rohrer's Jeep in hand, Appellant exited the Rohrer residence only to come upon Deborah Hock and her fiancée, James Gilliam, who lived in the other half of the duplex where Christine and Travis Rohrer lived. Appellant raised the handgun and fatally shot Gilliam in the chest. Appellant turned the weapon on the prone Deborah Hock and fired at her. The shot missed Hock, but the muzzle blast left her with powder burns on her hand and wrist. Appellant left the scene in Christine Rohrer's Jeep and drove through the countryside for a few hours before returning to Chambersburg. Appellant then called his girlfriend from a pay phone. Afterwards, he surreptitiously entered his parents' home, the place where he had been residing. Chambersburg police

eventually tracked Appellant to his parent's house and, on November 4, 1998, took Appellant into custody.

Following his arrest, Appellant underwent multiple rounds of medical and psychological testing. On August 16, 2000, following written and oral on-the-record colloquies, the trial court accepted Appellant's guilty pleas to: first-degree murder of Christine Rohrer; murder generally in the death of James Gilliam; two counts of criminal attempt to commit homicide; criminal trespass; rape; and theft. The trial court conducted a degree of guilt hearing on September 19, 2000, at which the court found Appellant guilty of first-degree murder in the killing of James Gilliam.

A jury was impaneled for the penalty phase proceedings.[7] Following six days of testimony, evidence and argument, the jury concluded that with respect to Christine Rohrer's murder, Appellant had proved the existence of four mitigating circumstances, namely that he had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); second, that he was operating under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2); third, Appellant's age at the time of the crime, 42 Pa.C.S. § 9711(e)(4); and fourth, any other evidence of mitigation concerning the character and record of Appellant and the circumstances of his offense. 42 Pa.C.S. § 9711(e)(8). The penalty phase jury also concluded with respect to the Christine Rohrer murder that the Commonwealth had proved the existence of three aggravating circumstances, specifically: Christine Rohrer's murder was committed in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); the offense was committed by means of torture, 42 Pa.C.S. § 9711(d)(8); and, Appellant had been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense, 42 Pa.C.S. § 9711(d)(10). Concluding that the aggravating circumstances outweighed the mitigating circumstances, on January 31, 2001,

7. 42 Pa.C.S. § 9711(a).

the jury sentenced Appellant to death for the killing of Christine Rohrer.

That same day, the jury found, regarding James Gilliam's murder, that the defense had met its burden of proving five mitigating circumstances, namely Appellant had no significant history of prior criminal convictions, 42 Pa.C.S. § 9711(e)(1); Appellant was under the influence of extreme mental or emotional disturbance, 42 Pa.C.S. § 9711(e)(2); Appellant's capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law was substantially impaired, 42 Pa.C.S. § 9711(e)(3); Appellant's age at the time of the crime, 42 Pa.C.S. § 9711(e)(4); and, any other evidence of mitigation concerning the character and record of Appellant and the circumstances of his offense. 42 Pa.C.S. § 9711(e)(8). The jury found that the Commonwealth proved the existence of three aggravating circumstances in the death of James Gilliam, specifically: killing in the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); in committing the offense, Appellant created a grave risk of death to another person, 42 Pa.C.S. § 9711(d)(7); and, Appellant had been convicted of another Federal or State offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable or the defendant was undergoing a sentence of life imprisonment for any reason at the time of the commission of the offense, 42 Pa.C.S. § 9711(d)(10). Finding that the evidence of the mitigating circumstances outweighed that of the aggravating circumstances, the jury sentenced Appellant to life imprisonment for the death of James Gilliam.

On June 4, 2001, the trial court imposed the above sentences in the first-degree murder charges. The court additionally imposed consecutive sentences of 20 to 40 years and 10 to 20 years of incarceration for the two counts of criminal attempt to commit homicide; 10 to 20 years of incarceration for the rape conviction; and 36 to 84 months of incarceration for the criminal trespass and theft convictions.

Appellant's trial counsel filed a petition to withdraw on June 11, 2001. Appellant's current appellate counsel was appointed

that same day, and on June 29, 2001, Appellant filed Post–Sentence Motions raising, *inter alia*, ineffective assistance of counsel claims, a motion to withdraw the guilty pleas and a motion for a new trial based on the assertion that the jury's finding that the aggravating circumstances outweighed the mitigating circumstances in the killing of Christine Rohrer was against the weight of the evidence. On January 28, 2002, the trial court conducted a hearing on all the issues raised in Appellant's Post–Sentence Motions. On May 17, 2002, the trial court filed an Order and Opinion, denying all of Appellant's Post–Sentence Motions. Pursuant to the automatic direct appeal provisions found in 42 Pa.C.S. § 722(4) and § 9711(h)(1), the case progressed to this court for our review.

As with all cases where the death penalty has been imposed, we first must conduct an independent review of the sufficiency of the evidence. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied*, 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983). In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as the verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. *Commonwealth v. Ockenhouse*, 562 Pa. 481, 756 A.2d 1130, 1135 (2000).

In order to sustain a finding of first-degree murder, the evidence must establish the unlawful killing of a human being, that the appellant did the killing and that the killing was done in an intentional, deliberate and premeditated way. *Commonwealth v. Mitchell*, 528 Pa. 546, 599 A.2d 624, 626 (1991). The evidence presented at the guilty plea, degree of guilt and penalty phase hearings demonstrates that Appellant intentionally stabbed Christine Rohrer to death and, in the immediate aftermath, took certain steps to conceal his actions. In the process of fleeing from the Rohrer residence, Appellant

leveled a handgun directly at James Gilliam from a distance of no more than four feet, shot him dead, shot at Deborah Hock and fled the scene in Christine Rohrer's vehicle. These acts are sufficient to establish murder of the first degree in each death.

Having resolved the sufficiency of the evidence inquiry, we now address the issues raised in Appellant's brief. In his first issue, Appellant contends that the trial court exceeded its authority in accepting Appellant's guilty plea to first-degree murder in the death of Christine Rohrer. Appellant argues that *Commonwealth v. Berkenbush,* 267 Pa. 455, 110 A. 263 (1920) and its progeny foreclose a court's ability to accept a guilty plea to first-degree murder. Appellant isolates the following passage from *Berkenbush* in support of this argument: "[T]he accused may not plead guilty to murder of the first degree. He may plead guilty to murder, but it is incumbent on the court to fix the degree from testimony produced." *Berkenbush,* 110 A. at 265.

Appellant, to his credit, concedes that this passage is not the holding in the case. Nevertheless, Appellant cites several of our decisions that subsequently seized that passage as a positive statement of law. *See e.g., Commonwealth v. Iacobino,* 319 Pa. 65, 178 A. 823 (1935), *Commonwealth v. Jones,* 355 Pa. 522, 50 A.2d 317 (1947) and *Commonwealth v. Appel,* 547 Pa. 171, 689 A.2d 891 (1997). Notwithstanding the fact that the passage from *Berkenbush* was *dicta,* Appellant contends that its subsequent repetition by our court created a liberty interest in defendants convicted of murder and that this interest requires adherence to procedure following a guilty plea to murder.

First, Appellant is reminded that mere repetition does not elevate *obiter dicta* to the level of binding precedent. *See Hunsberger v. Bender,* 407 Pa. 185, 180 A.2d 4, 6 (1962) (finding that a statement in prior opinion, which clearly was not decisional but merely *dicta,* "is not binding upon us"). Therefore, Appellant's reliance on the cases he cites is at his own peril, as those cases share an unreliable ancestor in

*Berkenbush's dicta.* Moreover, as will be discussed *infra,* Appellant overlooks that this court has upheld sentences where the defendant has pleaded guilty to first-degree murder. Thus, Appellant's claim that *Berkenbush* precludes a court's acceptance of a first-degree murder guilty plea cannot stand.

Appellant's associated due process argument must fail for similar reasons. Appellant submits that he had a liberty interest in *Berkenbush's dicta* which he contends precluded the trial court from accepting his guilty plea to first-degree murder. Moreover, Appellant cites our decisions in *Commonwealth v. Greene,* 227 Pa. 86, 75 A. 1024 (1910) and *Commonwealth v. Drum,* 58 Pa. 9 (Pa.1868) for the proposition that it is a deeply-rooted tradition in our law that the Commonwealth has the burden of proving first-degree murder, which, in turn, cannot be waived by a criminal defendant with the court's sanction. Consequently, Appellant argues the trial court denied him his due process rights by accepting his plea.

Appellant's argument is premised, once again, on the precedential value of *Berkenbush.* As discussed *supra,* and as conceded by Appellant, the passage in *Berkenbush* is mere *dicta* and not the law. Moreover, Appellant's reliance on *Greene* and *Drum* can extend no further than the proposition that, indeed, the Commonwealth has a specific burden of proof. These cases do not hold that, much less address the issue of whether, accepting such a guilty plea violates due process. Therefore, Appellant's due process argument must fail.

Appellant's arguments regarding a court's ability to accept a first-degree murder plea are foreclosed by our decision in *Commonwealth v. Fears,* 575 Pa. 281, 836 A.2d 52 (2003). In *Fears* we held that a defendant is not deprived of his due process rights under Article I, Section 9 of the Pennsylvania Constitution when the court accepts a knowing, voluntary and intelligent guilty plea to first-degree murder. *Fears* was decided while the appeal in the matter *sub judice* was pending. On June 2, 2004, this court issued a Per Curiam Order

directing the instant parties to file supplemental briefs on the issue of whether our decision in *Fears* applied to this particular case.

Appellant, in response to our June 2, 2004 Order, framed his analysis solely on the issue of whether *Fears* applied retroactively to his plea. Appellant's Supplemental Brief at 4. Appellant argues that *Fears* has no retroactive effect and that his guilty pleas were impermissible. Appellant's argument is that the court, in accepting such a plea, abrogates the Commonwealth's burden and, consequently, denies his due process rights. Appellant contends this error entitles him to have his sentence vacated and also to a remand for the withdrawal of his guilty plea. The Commonwealth, in its Supplemental Brief, contends that *Fears* is not new law, does not break from past practices and that there is no legitimate reason not to apply *Fears* to the present case. We agree with the Commonwealth.

Appellant places *Berkenbush* at the foundation for his contention that *Fears* represents a fundamental shift in precedent on a court's ability to accept a first-degree murder plea. Prior to *Fears,* Appellant contends *Berkenbush* was the controlling standard. As discussed, *supra,* Appellant's reliance on *Berkenbush's dicta* and the cases that cite to such does not aid his argument. Our holding in *Fears,* on the contrary, rests on the more solid jurisprudential foundation of our death penalty statute, 42 Pa.C.S. § 9711(b), Pennsylvania Rule of Criminal Procedure 802, and several instances where our court had affirmed the judgments of sentence where defendants entered guilty pleas to first-degree murder charges. *See e.g., Commonwealth v. Fiebiger,* 570 Pa. 583, 810 A.2d 1233 (2002); *Commonwealth v. Ockenhouse,* 562 Pa. 481, 756 A.2d 1130 (2000), and *Commonwealth v. Michael,* 544 Pa. 105, 674 A.2d 1044 (1996). Appellant is incorrect that our holding in *Fears* represents an abrupt and fundamental shift from prior precedent upon which litigants may have relied and thus represents a new law for purposes of a retroactivity analysis. Having concluded that *Fears* does not announce a new rule of law, there is no need to engage in a retroactivity analysis of the

applicability of *Fears* to this case. Contrary to Appellant's arguments, *Fears* applies to the instant matter and for all the reasons stated above, we find no error by the trial court in accepting Appellant's guilty plea to the first-degree murder of Christine Rohrer. We now address the remaining issues of Appellant's direct appeal.

■ Appellant next contends that the trial court's acceptance of his guilty plea to first-degree murder also deprived him of his right against self-incrimination under the Fifth Amendment of the United States Constitution. Appellant contends that he would have had such protection at a degree of guilt hearing had he been able to plead to murder generally. Appellant suggests that the trial court exceeded its authority in accepting his guilty plea to first-degree murder and thus used his admission to convict him of that crime. In accepting his plea, Appellant again asserts that the trial court, in accepting his guilty plea to first-degree murder in the death of Christine Rohrer, relieved the prosecution of its burden.

First, Appellant's argument in this regard is dependent on his claim that it was improper for the trial court to allow him to plead to first-degree murder. As we have stated *supra,* this position is without merit. Similarly, Appellant's reliance on *Commonwealth v. Sanabria,* 478 Pa. 22, 385 A.2d 1292 (1978) is without merit, as that case is distinguishable from the instant matter. In that case, the appellant Jose Sanabria, was one of two co-defendants in a homicide. In both *Sanabria* and the case it relied upon, *Commonwealth v. Garland,* 475 Pa. 389, 380 A.2d 777 (1977), one co-defendant attempted to compel the testimony of the other co-defendant, who had previously entered a general plea of guilt to homicide. When these co-defendants declined to testify, citing their Fifth Amendment rights, the trial courts refused to compel their testimony. Appellants in both *Sanabria* and *Garland* argued that the pleas of guilt amounted to a waiver of rights against self-incrimination. *Sanabria,* 385 A.2d at 1295; *Garland,* 380 A.2d at 779–80. We disagreed in both cases and affirmed the trial courts, holding that the waiver does not go into effect

until, at the very least, sentencing. *Sanabria,* 385 A.2d at 1295 (quoting *Garland,* 380 A.2d at 780).

The instant matter differs substantially. Unlike *Sanabria* and *Garland,* this matter does not involve compelling co-defendants to provide exculpatory evidence over their assertion of rights against self-incrimination. Appellant was the only one arrested and tried in these murders. Second, unlike the reluctant co-defendants in those cases, Appellant was not compelled to testify after he entered his guilty plea. Lastly, Appellant, unlike the co-defendants in *Sanabria* and *Garland,* never asserted his rights against self-incrimination after he pleaded guilty. In sum, we find no trial court error based upon Appellant's argument in this regard.

Initially, we note that two of Appellant's remaining claims allege ineffective assistance of trial counsel.[8] In framing his ineffectiveness claims, Appellant correctly states the general rule that trial counsel is presumed to be effective and the burden to show otherwise lies with the defendant. *Commonwealth v. Jones,* 546 Pa. 161, 683 A.2d 1181, 1188 (1996). To obtain relief on a claim of ineffective assistance of counsel, Appellant is required to show that there is merit to the underlying claim; that counsel had no reasonable basis for his course of conduct; and finally, that there is a reasonable probability that but for the act or omission in question, the outcome of the proceeding would have been different. *Commonwealth v. Douglas,* 537 Pa. 588, 645 A.2d 226, 230 (1994); *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). In reviewing any particular claim of ineffectiveness, we need not determine whether the first two prongs of this standard are met if the record shows that Appellant has not met the prejudice prong. *Commonwealth v. Travaglia,* 541 Pa. 108,

8. We held in *Commonwealth v. Grant* 572 Pa. 48, 813 A.2d 726 (2002) that defendants are to reserve claims of ineffective assistance of trial counsel until collateral review proceedings. However, our review of the instant ineffective assistance of counsel claims falls within an exception to *Grant* announced in *Commonwealth v. Bomar,* 573 Pa. 426, 826 A.2d 831 (2003) (holding that direct appellate review of ineffective assistance of counsel is permitted where the issues were raised in the trial court, a hearing was held at which trial counsel testified, and the trial court passed on those claims).

661 A.2d 352, 357 (1995), *cert. denied* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996).

■ . Appellant first asserts that his trial counsel was ineffective for advising him to plead guilty to first-degree murder. Appellant forwards this assertion on two tracks: first, that trial counsel failed to advise Appellant that he could not plead guilty to first-degree murder; and, second, because trial counsel, in advising Appellant to enter a guilty plea to first-degree murder, failed to apprise Appellant of the option of entering a general murder plea followed by a separate degree of guilt hearing. Appellant contends that had he been aware of this latter possibility, he would have had this option at his disposal and therefore could have mounted a diminished capacity defense. Moreover, had this route been taken and had this tactic proved successful, Appellant contends he could have received a second, rather than first-degree murder conviction.[9]

As we discussed, *supra,* a defendant is permitted to plead guilty to first-degree murder. There is no infirmity in this approach and therefore we find no arguable merit in this facet of Appellant's ineffective assistance claim. *See Commonwealth v. Giknis,* 491 Pa. 215, 420 A.2d 419, 421 (1980)(finding counsel not ineffective for failing to pursue a meritless claim); *see also Fears,* 836 A.2d at 63 ("As we reject [Fears'] argument that one may not plead guilty to first-degree murder, we likewise reject the ineffectiveness claim arising from this issue.").

9. A review of our precedent on the diminished capacity defense reveals that a defendant who successfully asserts this defense has shown that he was incapable of forming the specific intent to kill and first-degree murder is mitigated to third, not second, degree murder. *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 359 (1995), *cert. denied,* 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996). Appellant's confusion in this regard may stem from the fact the transcript of the Hearing on Appellant's Post–Sentence motions reveals that trial counsel often discussed with Appellant the possibility that, in the event that Appellant plead guilty to first-degree murder in the death of Christine Rohrer and entered a general plea of guilt to murder in the death of James Gilliam, the prosecution would withdraw from seeking the death penalty if, following the conclusion of a degree of guilt hearing in the Gilliam murder, Appellant was found guilty of second-degree murder. N.T., Post Sentence Motion Hearing 1/28/2002, at 64.

Thus, we turn to the second facet of Appellant's claim that counsel was ineffective for failing to advise Appellant of the option of a degree of guilt hearing with respect to the death of Christine Rohrer and that this failure precluded the assertion of a diminished capacity defense.[10]

Appellant's claim lacks arguable merit for several reasons. First, trial counsel testified that they contemplated and actually posed the possibility of compelling the Commonwealth to go through degree of guilt hearings on both the Rohrer and Gilliam murders. N.T., Post–Sentence Motions Hearing, 1/28/2002, at 104. Trial counsel testified that this course of action was dismissed because the prosecution informed them that it would eliminate any chance of the Commonwealth removing the death penalty from sentencing options. *Id.*

Second, it is difficult to comprehend a scenario, like the one *sub judice,* wherein a defendant compels the Commonwealth to undertake a degree of guilt hearing on one of two counts of murder in a double homicide and claims later that such a tactic never was discussed on the other charge. Counsel is presumed to have acted effectively, which in this case would encompass discussing this option with his client and the burden is on Appellant to establish that counsel failed in this task. *See e.g. Commonwealth v. Ogrod,* 576 Pa. 412, 839 A.2d 294 (2003)(stating that a presumption of counsel's effectiveness overcome only by Appellant meeting the three-prong *Pierce* test). We note that the record is replete with missed opportunities for appellate counsel to have developed this issue. In fact, appellate counsel's examination of trial counsel pointedly stops short of asking trial counsel this specific question. Appellant would have us infer a failure on the part of trial counsel based upon the assertion that the record is devoid of any testimony or evidence, when, in fact, the absence of any

**10.** Diminished capacity is an extremely limited defense. *Travaglia,* 661 A.2d 352, 359 n. 10. In mounting this defense, the defendant can introduce psychiatric testimony that addresses "mental disorders affecting the cognitive functions [of deliberation and premeditation] necessary to formulate a specific intent." *See Zettlemoyer,* 454 A.2d at 943.

inquiry of trial counsel by Appellant, when afforded several opportunities to do so, resounds with a deafening silence and supports a reasonable assumption that this option indeed was discussed with Appellant.

Third, Appellant contends that counsel's shortcomings precluded his assertion of a diminished capacity defense. Appellant failed to develop on the record that he could have been or was of diminished capacity at the time of the murders. Trial counsel testified that they discussed these defenses with Appellant, but expert reports were against the assertion of these defenses. N.T., Post–Sentence Motions Hearing 1/28/2002, at 92. In fact, trial counsel informed the court in pre-trial proceedings that Appellant was not going to present expert testimony with regard to mental infirmity in the guilt phase. N.T., Pre-trial Conference 7/14/2000, at 32–3. Moreover, Appellant attaches nothing to his appellate brief to support any conclusion to the contrary. In conclusion, Appellant has not demonstrated that this facet of his ineffectiveness claim has any merit and trial counsel will not be faulted for such.

Turning to Appellant's second and separate ineffectiveness claim, Appellant finds fault with trial counsel for failing to seek suppression of a statement given to Chambersburg Police in which he admitted to killing Christine Rohrer, stabbing Travis Rohrer and shooting at Deborah Hock and James Gilliam. The statement was admitted into evidence without objection. N.T., Degree of Guilt Hearing 9/19/00, at 121. Appellant contends that this confession was obtained in violation of rights guaranteed to him by the Fifth and Sixth Amendments to the United States Constitution. Appellate counsel concedes there is little or no record evidence surrounding the confession and the tactics and manner used to obtain it. Appellant surmises that had trial counsel sought suppression and had such suppression been successful, there would have been one less piece of evidence against him. Appellant argues that the absence of this evidence could have been of great benefit to Appellant's trial strategy, plea negotiations, or sentencing.

It is difficult to discern the precise nature of these claims, as they are stated in bald, conclusory terms and lack any semblance of precision as to their individual merits. Appellant, for example, fails to cite the moments when these rights attached, what acts, if any, were done in violation of these rights, or any case law to support such conclusions. Appellant's trial counsel testified at the hearing on Post–Sentence Motions that they chose not to seek suppression of the confession "because it would have done Mr. Singley no good and there were things in the confession that we thought might help him in a mitigation phase." N.T., Post–Sentence Motions Hearing 1/28/02, at 61. Appellant now contends that the merit of this position is inconceivable and that the prejudice of admitting this overwhelmingly detrimental statement outweighed any potential benefit that might occasion its admission.

Contrary to Appellant's position, the record shows that police informed him of his rights as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) on two occasions. The uncontroverted record also demonstrates that Appellant acknowledged that Detective Dianne Kelso advised him of these rights prior to the interview, that Appellant understood these rights and that Appellant waived those rights to provide the statement to Detective Kelso. *See* Comm. Ex. 14, Degree of Guilt Hearing 9/19/2000, at 1. Despite having both Appellant and trial counsel testify during the Post–Sentence Motions hearing, appellate counsel failed to utilize these opportunities to substantiate the claim that the confession was obtained in derogation of Appellant's constitutional rights.

Again, proceeding under the analytical framework of *Pierce,* we find no arguable merit in Appellant's claims. The record does not establish, nor did Appellant demonstrate that Appellant invoked his right to counsel or his right to silence so as to trigger the prohibition against all further police-initiated conversations. *See Fears,* 836 A.2d at 60. Therefore, counsel was not ineffective for not seeking to suppress the confession.

24

 Appellant's final argument pertains to the admission of victim impact testimony in the penalty phase of his trial. Appellant raises this claim as an instance of trial court error, claiming that the trial court improperly permitted this testimony over his trial counsel's objection. During the penalty phase of a capital murder trial in this Commonwealth, "evidence concerning the victim and the impact that the death of the victim has had on the family of the victim is admissible." *Commonwealth v. Williams,* 578 Pa. 504, 854 A.2d 440, 445 (2004). The trial court is vested with the discretion to regulate the presentation of victim impact evidence and "relief is always available to correct those situations where unduly prejudicial information is introduced which renders the sentencing process fundamentally unfair." *Id.* at 446. (citations omitted).

During the penalty phase of the trial, the Commonwealth called upon Christine Rohrer's mother, brother and husband, Travis Rohrer, to testify to the impact of her death and James Gilliam's father and fiancée, Deborah Hock, to testify similarly regarding Gilliam's death.

Appellant argues that the victim impact testimony was not relevant to a specific aggravating circumstance and therefore was unduly inflammatory and prejudicial. Appellant relies upon our decisions in *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996) and *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143 (2001) to support his argument. *Fisher,* Appellant contends, bars the admission of such testimony because it interjects arbitrary and impermissible factors into the jury's sentencing decision. *Means,* Appellant suggests, prohibits the admission of generalizations about the victim's death on the community and information concerning the victim's particular characteristics.

Appellant took specific issue with the testimony from Rev. James Gilliam, father of James Gilliam. Rev. Gilliam testified that his deceased son was his only son and that his death, without any children, specifically male children, prevented the Gilliam family name from continuing beyond him. N.T., Penalty Phase Hearing 1/25/01, at 143.

Appellant similarly takes issue with Ms. Hock's testimony regarding her participation in an event at her fiancée's workplace. Ms. Hock testified that her fiancée's employer shut its plant down in the days following Gilliam's death. N.T., Penalty Phase Hearing 1/25/01, at 139. She also testified that the employer asked her to participate at a company-sponsored event in which the employer rewarded an employee demonstrating traits and characteristics exemplified by James Gilliam. N.T., Penalty Phase Hearing 1/25/01, at 139. Although Appellant objects to no other specific testimony, he makes a blanket objection to the rest of the victim impact testimony as excessive.

We find no merit to the Appellant's claims of excessive testimony. The cumulative effect of the testimony clearly demonstrates that the deaths had a profound effect on the respective families. The testimony was not generalized statements on the effect of deaths of Christine Rohrer and James Gilliam on the community, nor did it concern any of the victim's particular characteristics. Rather, the statements were an individualized and subjective commentary on the consequences of the murders. Appellant's contentions regarding Ms. Hock's statements likewise must fail. Appellant improperly trains his focus in this regard on Ms. Hock's references to her fiancée's employer and the award's recognition of James Gilliam's characteristics. Ms. Hock's statements were not in a vacuum; but rather, rested within the context of her relating her personal involvement in the award ceremony and are followed immediately by her statements regarding the impact Gilliam's murder had on her teenaged son, their relationship, and her own anger-management issues. N.T., Penalty Phase Hearing 1/25/01, at 140–41. In sum, we find no issue with the trial court's admission of the victim impact testimony and therefore the sentencing process was not fundamentally unfair.

Finally, we will address whether the sentence of death was a product of passion, prejudice, or any other arbitrary factor; 42 Pa.C.S. 9711(h)(3). We have engaged in a

careful review of the trial record. Based upon that review, we conclude that the sentence of death in Appellant's case was not the product of passion, prejudice, or any other arbitrary factor. Rather, the sentence was based upon the evidence admitted at trial and in compliance with the statutory mandate for the imposition of a sentence of death where one or more aggravating circumstances are found to outweigh any mitigating circumstances. 42 Pa.C.S. § 9711(c)(1)(iv). Furthermore, we have determined that the evidence was sufficient to support the aggravating circumstances the jury found in imposing the death penalty.

Accordingly, for all the foregoing reasons, we affirm the verdict of first-degree murder and the sentence of death.[11]

Justice NIGRO files a concurring opinion.

Justice CASTILLE concurs in the result.

Justice NIGRO concurring.

I agree with the majority's decision to affirm Appellant's judgment of sentence. I write separately merely to note that with regard to Appellant's claim that the trial court improperly admitted victim impact testimony during his penalty phase, I continue to believe that the statutory provisions that permit the jury to consider victim impact testimony during the penalty phase of a capital case are unconstitutional.[1] *See Commonwealth v. Williams,* 578 Pa. 504, 854 A.2d 440, 449–50 (2004) (Nigro, J., concurring); *Commonwealth v. Rice,* 568 Pa. 182, 795 A.2d 340, 363–64 (2002) (Nigro, J., concurring); *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143, 162–67 (2001) (Nigro, J., dissenting). Nonetheless, I recognize that a major-

---

11. The Prothonotary of this Court is directed to transmit to the Governor's office a full and complete record of the trial, sentencing hearing, imposition of sentence and opinion and order by the Supreme Court in accordance with 42 Pa.C.S. § 9711(i).

1. In *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143 (2001), I suggested that this Court adopt a series of rules to govern the admission of victim impact testimony. *See id.* at 165–66 (Nigro, J., dissenting). In my view, these rules would "ensure that the death penalty is meted out with proper guidance and is not imposed in an arbitrary or capricious manner." *Id.* at 165.

ity of this Court has concluded otherwise, and under that binding precedent, I must agree that the trial court did not abuse its discretion in admitting victim impact testimony during the penalty phase of Appellant's trial.